UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Cindy Larson,

                Plaintiff,

v.

Arthur J. Gallagher & Co., Risk Placement Services, Inc.,

                Defendants.

Civil No. 13-1506 (JNE/SER)

**ORDER**

Michele Dau,

                Plaintiff,

v.

Arthur J. Gallagher & Co., Risk Placement Services, Inc.,

                Defendants.

Civil No. 13-1560 (JNE/SER)

Plaintiffs Cindy Larson ("Larson") and Michele Dau ("Dau") each brought an action against Defendants Arthur J. Gallagher & Co. ("AJG") and Risk Placement Services, Inc. ("RPS") (collectively, "Defendants"), alleging sex discrimination and hostile work environment claims under the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.01 et seq., sexual harassment under the MHRA, reprisal under the MHRA, and age discrimination under the MHRA. Now before the Court are Defendants' 12(b)(6) Motions for Partial Dismissal of Plaintiffs' Claims, seeking dismissal of the sexual harassment, discrimination based on sex, and

1

reprisal claims. For purposes of these motions, the relevant portions of Dau and Larson's Complaints are either identical or largely similar and will be addressed together.

## I. BACKGROUND

AJG is an international insurance brokerage and risk management services firm. RPS, a subsidiary of AJG, is an underwriting management company. Dau began working at the Robert A. Schneider Agency, Inc. in 1995; Larson began working at the Robert A. Schneider Agency, Inc. in 2002. In 2009, the Robert A. Schneider Agency merged with RPS.

Plaintiffs allege that in the fall of 2011, "the workplace environment became hostile, abusive, oppressive and intimidating." Dau Compl. ¶ 9; Larson Compl. ¶ 10. They assert that their manager, Matt Lynch ("Lynch"), instigated the hostile environment through his "practice of engaging in sexually inappropriate relationships with employees," which led him "to exhibit favoritism for the employee he was sexually involved with and those who supported (or did not disapprove of) his relationship with the woman." *Id.* Specifically, the Complaints allege that Lynch was involved with an employee named Alyson Swanson ("Swanson") and that he demonstrated favoritism for Swanson. According to the Complaints, Swanson had no experience or training, yet was treated more favorably by Lynch—for example, she was permitted to come and go "whenever she pleased," "took long lunches," "spent a lot of time on personal calls," and received other perks such as invitations to events such as baseball games. Larson Compl. ¶¶ 13-15; Dau Compl. ¶¶ 15-17.

When Plaintiffs complained about the affair and sexual favoritism Lynch demonstrated toward Swanson, they were allegedly told that nothing could be done and not to discuss it with Lynch. Larson complained to employee and former-owner Bob Schneider, who allegedly stated that Lynch was "no different from other men in the company" and that the leaders in the

2

company were "good old boys who have all had affairs with employees." Larson Compl. ¶ 27; Dau Compl. ¶ 27. In response to Plaintiffs complaints, Lynch allegedly became angry and began treating Plaintiffs badly, including the use of "foul and unprofessional language in the office and erratic outbursts." Larson Compl. ¶¶ 22, 24. The Complaints also allege that Lynch was generally known as being "a dishonest, retaliatory tyrant." *Id.* ¶ 11; Dau Compl. ¶ 10. Larson complained to Human Resources ("HR"), reporting "the hostile work environment based upon Lynch's sexual favoritism regarding Ms. Swanson." Larson Compl. ¶ 29. She informed the HR representative "that Ms. Swanson was not performing her work duties, was distracted and that Lynch permitted Ms. Swanson to do as she pleased and that it had an adverse impact on her and other employees." *Id.* ¶ 31. According to Larson's Complaint, Larson told the HR representative that "workers were crying and overstressed on a daily basis." *Id.* ¶ 32.

Lynch eventually terminated Plaintiffs' employment—Larson was terminated in May 2012, and Dau was terminated in August 2012. Both Larson and Dau assert that they were terminated as retaliation for complaining about Lynch's behavior.

## II. DISCUSSION

When ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept the facts alleged in the complaint as true and grant all reasonable inferences in favor of the plaintiff. *Mulvenon v. Greenwood*, 643 F.3d 653, 656 (8th Cir. 2011). Although a pleading is not required to contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

3

relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Plaintiffs each assert three claims under the MHRA: sexual harassment, discrimination and hostile work environment based on sex, and reprisal discrimination. The MHRA provides:

> [I]t is an unfair employment practice for an employer, because of . . . sex . . . to: . . . (2) discharge an employee; or (3) discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment.

Minn. Stat. § 363A.08, subdiv. 2. Minnesota courts interpret the MHRA in a manner consistent with Title VII. *See, e.g.*, *Hervey v. Cty. of Koochiching*, 527 F.3d 711, 719 (8th Cir. 2008) (stating that Title VII and the MHRA "are governed by the same standards"); *LaMont v. Indep. Sch. Dist. No. 728*, 814 N.W.2d 14, 21 (Minn. 2012); *Frieler v. Carlson Mktg. Grp.*, 751 N.W.2d 558, 573 (Minn. 2008); *Carlson v. Indep. Sch. Dist. No. 623*, 392 N.W.2d 216, 220-21 (Minn. 1986).

**A. Sexual Harassment/Hostile Work Environment Claim**

Plaintiffs claim to allege that the Defendants "engaged in widespread sexual favoritism, amounting to sexual harassment/hostile work environment." Larson Mem. Opp. 5; Dau Mem. Opp. 6. Specifically, they assert that Lynch had a "practice of engaging in sexually inappropriate relationships with employees." Larson Mem. Opp. 7; Dau Mem. Opp. 7.

> Title VII now prohibits both quid pro quo harassment, where an employee's submission to or rejection of a supervisor's unwelcome sexual advances is used as the basis for employment decisions, and hostile work environment harassment, where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."

4

*Tenge v. Phillips Modern Ag Co.*, 446 F.3d 903 (8th Cir. 2006) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). But "absent claims of coercion or widespread sexual favoritism, where an employee engages in consensual sexual conduct with a supervisor and an employment decision is based on this conduct, Title VII is not implicated because any benefits of the relationship are due to the sexual conduct, rather than the gender, of the employee." *Id.*

> In 1990, The Equal Employment Opportunity Commission weighed in, concluding that "[a]n isolated instance of favoritism toward a 'paramour' (or a spouse, or a friend) may be unfair, but it does not discriminate against women or men in violation of Title VII, since both are disadvantaged for reasons other than their genders." However, the Commission was careful to distinguish cases of favoritism to an employee actually involved in a romantic relationship with a supervisor from favoritism based on coerced sexual conduct, which amounts to quid pro quo harassment, and from widespread sexual favoritism in the workplace, which may establish a hostile work environment claim."

*Id.* Plaintiffs do not allege quid pro quo harassment or that there was any coerced or nonconsensual sexual conduct. Rather, they claim to allege widespread sexual favoritism. Where favoritism is "based upon the granting of sexual favors" and is "widespread in a workplace, . . . a message is implicitly conveyed that the managers view women as 'sexual playthings,' thereby creating an atmosphere that is demeaning to women." *EEOC Policy Guidance on Employer Liability Under Title VII for Sexual Favoritism*, EEOC Notice No. 915-048 (Feb. 15, 1990). To establish a claim of widespread sexual favoritism, Plaintiffs must allege conduct that is "sufficiently severe or pervasive 'to alter the conditions of [their] employment and create an abusive working environment.'" *Duncan v. Cty. of Dakota, Neb.*, 687 F.3d 955, 959 (8th Cir. 2012) (internal quotation marks and citation omitted).

Plaintiffs point to various allegations in the Complaints that they argue support a claim of widespread sexual favoritism. For example, the Complaints allege that Lynch once told "another employee" that he was "banging K's granddaughter." But there is no allegation that "K's

granddaughter" was an employee of RPS, that she was treated favorably, that Plaintiffs were aware of Lynch's alleged statement or conduct, or that the alleged statement or conduct affected the workplace. *See* Larson Compl. ¶ 17. Plaintiffs also claim that Schneider—another employee and the former owner of the company—described Lynch's conduct as "no different from other men in the company" and referred to the other leaders as "good old boys who have all had affairs with employees." *Id.* ¶ 27. These statements, if proven true, only reveal Schneider's unsubstantiated views of Lynch and the "other leaders" in the company. There are no factual allegations to support Schneider's alleged beliefs or to indicate that sexual favoritism was widespread in Plaintiffs' workplace.[1] Nor is there any allegation that Schneider himself was one of those "good old boys" who behaved just like all the "other men in the company." Nothing in Schneider's statements amounts to factual support for the contention that the workplace was saturated by male supervisors exhibiting sexual favoritism toward female subordinates. Plaintiffs also make the conclusory allegation that Lynch engaged in sexual conduct with other women in the company before and after Swanson's employment, *see* Larson Compl. ¶ 42, but there are no factual allegations to support this statement, nor are there any allegations that Plaintiffs were aware of these other women during their employ, that Lynch's alleged sexual conduct with those women affected the workplace, or that those other women were treated favorably. Larson's Complaint alleges that Lynch had a "history of a relationship" with "one of

---

[1] The Complaints also allege that Larson was reminded during her conversation with Schneider of a romantic relationship between someone named Joel Cavaness and one of his subordinates. Larson Compl. ¶ 27; Dau Compl. ¶ 27. But there is no allegation that Plaintiffs were aware during their employ of that relationship, how that relationship affected the workplace, whether sexual favoritism was an issue, or even who Mr. Cavaness was or where he was located. The fact that Larson had not even remembered the relationship until her conversation with Schneider suggests that the relationship did *not* have any sort of impact on her work environment. And there is no allegation that Larson or Dau ever complained about that relationship.

6

the two young women hired to replace Plaintiff," *id.* ¶ 40, but, again, there is no allegation of sexual favoritism demonstrated toward that woman or that the "history of a relationship" in any way affected conditions of Larson's employment.

The only factual allegations in the Complaints supporting Plaintiffs' claim of "widespread sexual favoritism" are the allegations regarding Lynch's relationship with Swanson, his preferential treatment of Swanson as a result of that relationship, and his antagonism toward anyone who opposed that relationship. These allegations, if proven true, do not amount to widespread sexual favoritism that is "severe or pervasive" so as to "create an abusive working environment" or convey a message that women at RPS were viewed "as sexual playthings." Rather, this is a classic example of "[a]n isolated instance of favoritism toward a 'paramour,'" which does not violate Title VII (or the MHRA). *Tenge*, 446 F.3d at 908. Because the Complaints contain no factual allegations that, if proven true, would amount to a claim of widespread sexual favoritism in violation of the MHRA, these claims must be dismissed.[2] *See, e.g.*, *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (holding that it was "manifestly correct" to dismiss hostile work environment claims based on a relationship between the vice president of the company and another employee); *Womack v. Runyon*, 147 F.3d 1298, 1300-01 (11th Cir. 1998) (affirming dismissal of claim based on a supervisor's preferential treatment of an employee with whom he was having a consensual relationship); *Thomson v. Olson*, 866 F. Supp. 1267, 1272 (D.N.D. 1994) (holding that "preferential treatment on the basis of a consensual relationship between a supervisor and an

---

[2]   Plaintiffs contend that they are not relying on "paramour favoritism" for any of their causes of action, and do not dispute that Minnesota law does not recognize such a claim. The factual allegations contained in the Complaints, however, belie Plaintiffs' arguments, as they amount only to assertions of favoritism demonstrated by Lynch toward the one employee with whom he was having a relationship.

employee is not a cognizable sex discrimination claim under Title VII"), *aff'd*, 56 F.3d 69 (8th Cir. 1995).

**B. Discrimination and Hostile Work Environment Based on Sex Claim**

Count I of the Complaints alleges that Defendants engaged in unlawful employment practices based upon the Plaintiffs' gender. "These practices include, but are not limited to, Defendants' discharge of Plaintiff from her employment, in part, because another worker was sexually favored by Defendants' manager and Plaintiff voiced her disapproval with the same." Dau Compl. ¶ 51; Larson Compl. ¶ 47. The Complaints further allege that "[t]he effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex/sexual favoritism. Plaintiff was subjected to a hostile work environment based on sex." Dau Compl. ¶ 52; Larson Compl. ¶ 48.

To the extent these claims are asserting MHRA violations based on the sexual favoritism demonstrated by Lynch toward Swanson, those claims must be dismissed for the reasons discussed above. In Plaintiffs' briefs, however, they contend that this claim is based on an allegation that men were treated differently than women. *See* Larson Mem. Opp. 9 (asserting that "men were permitted to conduct themselves in a manner discriminatory to women but were also treated differently (preferentially) to women"); Dau Mem. Opp. 9 (same); Larson Mem. Opp. 10 ("[W]omen [were] subjected to disparate treatment and conduct . . . ."); Dau Mem. Opp. 10 ("[W]omen [were] subjected to disparate treatment, comments and conduct . . . .").

The MHRA seeks to eliminate the "disparate treatment of female employees merely because they are female." *LaMont*, 814 N.W.2d at 20. "'[W]hen sexual harassment is directed at female employees because of their womanhood, female employees are faced with a working

environment different' than that of male employees." *Id.* (citation omitted). Additionally, "verbal and physical harassment directed at an employee because of her sex may constitute discrimination in the terms and conditions of employment." *Id.* at 21. Thus, in order to succeed on a claim for hostile work environment based on sex, "a plaintiff must prove that (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on membership in a protected group; (4) the harassment affected a term, condition or privilege of her employment; and (5) the employer knew of or should have known of the harassment and failed to take appropriate remedial action." *Id.*

The Complaints, however, contain no factual allegations that support a claim that Plaintiffs were treated differently because they are female or were subjected to "disparate treatment, comments or conduct." *See LaMont*, 814 N.W.2d at 22 ("[W]e look only at the behavior that LaMont claims was directed at her because she is female."). For example, there are no allegations that women were treated differently when they engaged in the same conduct as the men, nor are there any allegations that men who complained about the alleged romantic relationships were treated differently than the women who complained. The only allegation of any sort of differential treatment is that Lynch treated women he considered to be attractive more favorably than those women he did not consider to be attractive. Larson Compl. ¶ 44, Dau Compl. ¶ 48. There are no other factual allegations to support this claim, nor does this allegation support the assertion Plaintiffs now make that men were treated preferentially to women. Plaintiffs allege they were treated badly when they complained about the sexual affair with Swanson, but there is no allegation that they were treated badly *because they were women*. Had a male employee lodged a similar complaint against Lynch, there is nothing to suggest that he,

9

too, would not have been treated badly. Thus, there is no allegation in either Complaint of discrimination based on sex.[3] These claims are also dismissed.

## C. Reprisal Discrimination Claims

Plaintiffs allege that Defendants retaliated against them for reporting the discriminatory treatment and hostile work environment. Dau Compl. ¶ 62; Larson Compl. ¶ 46. It is an unfair discriminatory practice to engage in reprisal against any person because that person opposed a practice prohibited by the MHRA. Minn. Stat. § 363A.15. "In order to establish a prima facie case of retaliation under the MHRA, an employee must show that (1) she engaged in protected conduct, (2) she suffered a materially adverse employment action, and (3) a causal connection exists between the materially adverse employment action and the protected conduct." *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011).

"To demonstrate the presence of protected opposition, a plaintiff must show a good faith reasonable belief that his employer engaged in a discriminatory employment practice." *Evans v. Kansas City, Mo. Sch. Dist.*, 65 F.3d 98, 100 (8th Cir. 1995); *see also Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997) (stating that a plaintiff need not prevail on his underlying Title VII claim, but must "have a reasonable belief that his activity was protected by Title VII" and "cannot avoid scrutiny of his claims merely by claiming such a belief" (internal quotation marks omitted)). Although the Minnesota Supreme Court has not yet resolved the question of whether an actual violation is necessary or whether a good-faith, reasonable belief that a violation occurred is sufficient, it has held that "the reasonableness of a party's belief must

---

[3] The Complaints also allege that Lynch hired more women than men and replaced Plaintiffs with other female employees—allegations that may in some cases actually contradict claims of discrimination based on sex. *See* Larson Compl. ¶¶ 39, 43; Dau Compl. ¶¶ 43, 44, 47; *Hansen v. Robert Half Int'l, Inc.*, 813 N.W.2d 906, 918 (Minn. 2012) (stating that to prove a case of discriminatory discharge, an employee must show that "the employer assigned a nonmember of the protected class to do the same work" after the employee was discharged).

be connected to the substantive law." *Bahr v. Capella Univ.*, 788 N.W.2d 76, 83 (Minn. 2010). "If a practice is not unlawful under the plain terms of the MHRA, a party's belief that the practice is unlawful cannot be reasonable." *Id.* at 84. A plaintiff may not rely entirely on his or her "own reasoning and sense of what is discriminatory," because "[a] basis as subjective as this would defeat any attempt to analyze whether a plaintiff had a reasonable belief." *Id.*; *see also Beyena v. Sunburst Transit, LLC*, No. A12-0817, 2012 WL 6554537 (Minn. Ct. App. Dec. 17, 2012) (unpublished) (stating that the plaintiff "must plead 'sufficient facts to show that it was objectively reasonable for [him] to believe that [respondents'] actions were forbidden by the MHRA'" (citation omitted)); *McCoy v. Metro. State Univ.*, No. A11-225, 2011 WL 3903282 (Minn. Ct. App. Sept. 6, 2011) (unpublished) ("A good-faith, reasonable belief 'must be connected to the substantive law,' and McCoy may not 'rely entirely on [his] own reasoning and sense of what is discriminatory.'" (citation omitted)).

Plaintiffs allege that they engaged in protected conduct by reporting the discriminatory treatment and hostile work environment. Examination of the factual allegations in the Complaints, however, reveals that Plaintiffs complained exclusively about Lynch's relationship with and favorable treatment of Swanson and the negative effect that relationship had on the workplace. *See* Larson Compl. ¶ 12 ("Employees complained to each other and some complained anonymously to management about Lynch's favoritism for employee, Aly Swanson."); *id.* ¶ 20 (stating that in October 2011, Larson called the HR hotline "to report that Lynch was having an affair with Ms. Swanson" and that Swanson's husband had threatened to come into the office); *id.* ¶ 22 (stating that Larson wrote a letter to Lynch "regarding Lynch's sexual favoritism demonstrated toward Ms. Swanson and the fact that the conduct made for a hostile environment for her and other employees"); *id.* ¶ 28 (alleging that Larson and Dau

"complained about Lynch's favorable treatment of Ms. Swanson"); *id.* ¶ 29 (Larson reported "the hostile work environment based upon Lynch's sexual favoritism regarding Ms. Swanson"); *id.* ¶ 31 (Larson reported that "Ms. Swanson was not performing her work duties, was distracted and that Lynch permitted Ms. Swanson to do as she pleased and that it had an adverse impact on her and other employees" and that Swanson "received the favorable treatment because she and Lynch were involved in a sexual/romantic relationship"); Dau Compl. ¶ 34 (Dau wrote a letter complaining "about the sexual favoritism displayed by Lynch and the hostile and retaliatory environment Lynch had created for Plaintiff and others who had complained"); *id.*¶ 37 (Dau wrote a letter in support of Swanson's husband in the divorce/custody proceedings).

There are no allegations that Plaintiffs complained of any other sexual favoritism or conduct in the workplace or that they were being treated differently because of their gender. Rather, the Complaints allege that Plaintiffs reported and criticized only the relationship between Lynch and Swanson, the sexual favoritism Lynch displayed toward Swanson, and the negative effects of that particular relationship and favoritism on the other employees. They contend that their terminations were retaliation for lodging those complaints. Lynch's conduct, even if abrasive and offensive, was not unlawful under the plain terms of the MHRA and Plaintiffs may not rely on their own subjective sense of what is prohibited by law. *See Bahr*, 788 N.W.2d at 84. Plaintiffs may have used the words "hostile work environment" and "discriminatory" in their complaints to supervisors and HR, but the conduct of which they actually complained was conduct that did not constitute discrimination, sexual harassment, or a hostile work environment under the MHRA. Given the substantive law, Plaintiffs fail to allege facts indicating they had an objectively reasonable belief that Defendants' conduct violated the MHRA. They therefore fail to allege that they engaged in a protected activity, and so their reprisal claims fail.

In sum, the Complaints allege that Lynch was romantically involved with Swanson, that he gave Swanson preferential treatment as a result of the romantic relationship, that the relationship and favoritism created an intolerable work environment for the other employees (including Plaintiffs), and that Lynch reacted antagonistically toward anyone who opposed the relationship. The Complaints also allege that Lynch was generally abrasive, "tyrannical," and "retaliatory." Title VII (and the MHRA), however, do "not set forth 'a general civility code for the American workplace.'" *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted). Workplace behavior that is socially unacceptable, caustic, or even tyrannical does not necessarily constitute actionable discrimination. "[T]he employment discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Rose-Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998). Plaintiffs' allegations concerning Lynch's relationship with and favorable treatment of Swanson, his abrasive management style and personality, and his antagonism toward those who opposed his relationship do not state a legally cognizable claim under the MHRA. The Complaints' hostile work environment and retaliation claims are therefore dismissed.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' Motion for Partial Dismissal of Larson's Claims [Civil No. 13-1506, Docket No. 6] is GRANTED.

2. Counts I, II and III of Larson's Complaint are dismissed.

3. Defendants' Motion for Partial Dismissal of Dau's Claims [Civil No. 13-1560, Docket No. 6] is GRANTED.

4. Counts I, II and III of Dau's Complaint are dismissed.

Dated: September 3, 2013

                                                          s/Joan N. Ericksen
                                                          JOAN N. ERICKSEN
                                                          United States District Judge